Dear General Patin:
You have requested an opinion of the Attorney General regarding the expenditure of Transportation Trust Fund ("TTF") monies for additional federal programs off the state and federal highway systems in light of the legal conclusions expressed in Attorney General Opinion No. 94-267-A.
You ask whether TTF monies can be expended for federal-aid off-system highway programs, including railroad crossing improvements; planning, engineering and administration of a variety of feasibility studies; federal urban systems projects; enhancement projects; and other similar bridge and highway programs for which Department of Transportation and Development ("DOTD") staff support services are necessary.
TTF funds would be used to (1) pay the salaries of DOTD employees required to support the federally mandated off-system highway-related programs and (2) provide the 20% state matching funds to secure the 80% federal funding. You also ask whether TTF monies can be used to pay the salaries of DOTD staff to administer non-state entity and other projects enumerated in the Capital Outlay Act and funded by the state through the issuance of General Obligation Bonds.
We believe the issues presented herein are controlled by ArticleVII, Section 27 of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
 "(A) . . . All monies appropriated by the Federal Highway Administration and the Federal Aviation Administration, or their successors, either reimbursed or paid directly, shall be paid directly or deposited in and credited to the trust fund.
 (B) The monies in the trust fund shall be appropriated or dedicated solely and exclusively for the costs for and associated with construction and maintenance of the roads and bridges of the state and federal highway systems . . . ."
While Opinion No. 94-267-A addresses the use of TTF monies for the Federal Off-System Bridge Replacement Program ("Program"), the legal precepts upon which it rests are equally applicable to the issues presented herein.
Opinion No. 94-267-A concludes that the TTF could be used to (1) pay the 20% state match to secure the 80% federal funding and (2) pay the salaries of DOTD employees who provide support for the Program.
The following criteria/elements were held to be crucial in reaching these conclusions:
 (1) Federal rules and regulations mandate that funds be apportioned to all eligible bridges on a priority basis, regardless of whether they are on or off-system (i.e., funds must be allocated to off-system bridges)
 (2) Failure to conform to the above mandate would result in the imposition of federal sanctions, including the forfeiture of massive federal funding for a variety of federal programs
 (3) The unavailability of funding for the Program from non-TTF state and local sources
 (4) The serious threat to the welfare and safety of the citizens of this and other states who use our roads and bridges in the absence of the implementation of the Program
 (5) Federal funds must be deposited in the TTF pursuant to constitutional mandate, thereby constituting a source of revenue of the TTF
 (6) The State Constitution must be interpreted by the same rules as are other laws and, therefore, must be read to accord equal dignity to all its provisions, giving effect to the intent of both the framers and the people who adopted it, thereby avoiding absurd and impractical results
 (7) The interpretation of those charged with the administration of a constitutional provision over a period of time is accorded great weight
We find these same criteria controlling of the issues presented herein. We further find the presence of each to be critical to our analysis. Thus, if the above criteria apply to a given federal off-system program, it is the opinion of this office that TTF monies may legally be expended to provide the 20% state matching funds, as well as the salaries of DOTD employees who administer the program.
In the case of the Federal Off-System Railroad Crossing Program, you advise that federal rules mandate that state funds be allocated to maintain and denote, through appropriate warning signals, both on and off-system railroad crossings. Failure to make allocations to off-system crossings will result in federal sanctions and loss of federal funding. The absence of funding from other state and local sources to carry out the program poses a serious threat to those who must traverse our roads and these crossings. The federal funding for the program must be deposited in, and constitutes a source of revenue of, the TTF, which would otherwise be unavailable for expenditure. Finally, DOTD has historically interpreted the Constitution to allow the use of state funds for this program. Accordingly, we opine that TTF monies can be used to provide the 20% state matching funds, as well as the salaries of DOTD employees who administer the Railroad Crossing Program. We believe this to be consistent with the reasoning set forth in Opinion No. 94-267-A.
We further opine that DOTD should consider each program on an individual basis, and in light of the aforementioned criteria, in making its determination as to the legality, vel non, of the use of TTF funds.
We also reiterate our belief that the need exists for a constitutional amendment to revise Article VII, Section 27 to remedy the ambiguities contained therein. This office will be available to work with you and others in drafting this revision.
We turn now to your final question regarding the use of the TTF to pay the salaries of DOTD staff to administer non-state entity and other projects enumerated in the Capital Outlay Act and funded by the state through the issuance of General Obligation Bonds. We have been advised by representatives of your office that these projects are neither federally mandated off-system highway-related, nor enumerated, by reference, in Article VII, Section 27(B). That being the case, we find no legal authority for the use of the TTF for the purpose contemplated in your request.
In summary, it is the opinion of this office that DOTD may utilize TTF monies for federally mandated highway and bridge-related programs to provide the 20% state matching funds to procure 80% federal funding, as well as to pay the salaries of those DOTD employees who administer said programs. However, each individual program must first be analyzed in light of the seven criteria enumerated and discussed hereinabove.
Further, we conclude that TTF monies may not be used to fund the salaries of DOTD employees who administer non-state entity and other projects enumerated in the Capital Outlay Act, and funded by the state through the issuance of Bonds. An alternative source of funding is provided for these projects in Section 9 of the Act.
Should you have any additional questions concerning these matters, please do not hesitate to contact me.
With kindest regards, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob, III/cla